UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

     NICOLE DI SCHINO,

                          Plaintiff,                       COMPLAINT

         - against -

     MERGERMARKET (U.S.) LTD.
     d/b/a Acuris,
                          Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

          Plaintiff Nicole Di Schino ("Di Schino" or "plaintiff") by her attorneys, Vladeck, Raskin & Clark, P.C., complains of defendant Mergermarket (U.S.) Ltd. ("Mergermarket," "the Company," or "defendant") as follows:

NATURE OF CLAIMS

          1.       Di Schino is a former practicing attorney with years of experience in anti-corruption compliance and enforcement. In 2012, Di Schino left private practice to work as an Associate Editor for a Mergermarket publication now known as the Anti-Corruption Report ("ACR").

          2.       Before Di Schino informed her managers that she was pregnant and planned to exercise her maternity leave rights, they praised her performance and routinely rewarded her with merit-based salary increases and bonuses. In 2015, in recognition of Di Schino's contributions, Mergermarket promoted Di Schino to Editor in Chief of the ACR.

          3.       Based on Di Schino's track record with the ACR, Di Schino never thought that her job might be in jeopardy until she notified her supervisor in March 2019 that she had experienced a miscarriage and later, in June 2019, that she was pregnant and planned to exercise her maternity leave rights.

1

4.     Less than three weeks after Di Schino informed Mergermarket that she was pregnant and would be taking leave, Mergermarket fired Di Schino. The Company admitted that Di Schino's firing had nothing to do with her performance. To the contrary, Di Schino was heralded as an "asset" to the company. Rather, according to Di Schino's manager, her job had been eliminated because of budgetary reasons.

5.     Contrary to Mergermarket's statements that it "eliminated" Di Schino's position, the Company has since effectively replaced Di Schino with her less experienced coworker who, prior to Di Schino's firing, reported to Di Schino.

6.     To make matters worse, even after terminating her employment, Mergermarket continued to discriminate against Di Schino and retaliated against her for her complaints about the Company's unlawful conduct.

7.     On January 13, 2020, Di Schino submitted a charge against Mergermarket ("January 2020 Charge") to the United States Equal Employment Opportunity Commission ("EEOC"). Ten days later, Mergermarket rejected without explanation Di Schino's pending candidacy for an editorial position for which she was undoubtedly qualified.

8.     Di Schino brings this action to remedy discrimination and retaliation in violation of Title VII of the Civil Rights Act as amended, 42 U. S.C. § 2000e et seq. ("Title VII"). Di Schino also brings this action to remedy discrimination and retaliation in violation of the New York State Human Rights Law ("State Law"), N.Y. Exec. Law § 296 et seq., and the New York City Human Rights Law ("City Law"), New York City Administrative Code, § 8–101 et seq.

9.     In addition, Di Schino brings this action to remedy violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA").

10.     Di Schino seeks injunctive and declaratory relief, compensatory, liquidated and punitive damages, and all other appropriate equitable and legal relief pursuant to Title VII, the FMLA, the State Law, and the City Law.

<u>JURISDICTION AND VENUE</u>

11.     This Court has jurisdiction over plaintiff's Title VII claims pursuant to 42 U.S.C. §20005(f)(3).  This Court has jurisdiction over plaintiff's FMLA claims under 29 U.S.C. § 2617.

12.     This Court has supplemental jurisdiction over plaintiff's State Law and City Law claims pursuant to 28 U.S.C. § 1367 because these claims closely relate to her Title VII and FMLA claims, having arisen out of a common nucleus of operative facts, such that all claims form part of the same case or controversy.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendant maintains offices in New York City and because a substantial part of the events or omissions giving rise to the claims occurred in New York City.

14.     Pursuant to Section 8-502(c) of the New York City Human Rights Law, Di Schino will cause to be served a copy of this Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

15.     On January 13, 2020, Di Schino filed a charge against Mergermarket alleging unlawful sex discrimination with the EEOC.  On February 27, 2020, Di Schino filed a supplemental charge with the EEOC alleging claims of retaliation against Mergermarket. On August 24, 2020, the EEOC issued plaintiff a notice informing her of the right to sue under Title VII.

<u>PARTIES</u>

16.     Di Schino is a resident of the State of New York. She worked at Mergermarket at its headquarters in New York City for almost seven years until the Company fired her when she informed Mergermarket that she was pregnant.

17.     Mergermarket, also known as Acuris, is a privately held financial news and data firm. Mergermarket has headquarters in New York, London, Mumbai, and Hong Kong.

<u>FACTUAL ALLEGATIONS</u>
<u>Background</u>

18.     Di Schino is a former practicing attorney with years of experience in civil, criminal, and complex commercial litigation. Di Schino's expertise, which she honed as a litigator and later as an editor, is in anti-corruption compliance and enforcement.

19.     Di Schino graduated from New York University School of Law in 2007. After graduating, she worked as an associate at Quinn Emanuel Urquhart & Sullivan, LLP and then at Manatt Phelps & Phillips LLP ("Manatt").  As a practicing attorney, Di Schino represented and advised clients on a variety of matters. During her time at Manatt in particular, Di Schino developed an expertise in anti-corruption work, advising clients on anti-corruption compliance and enforcement matters, including responding to government requests. Di Schino also designed compliance programs and conducted compliance training in anti-corruption.

<u>Di Schino's Success at Mergermarket</u>

20.     In November 2012, Di Schino left Manatt to work as an Associate Editor at the ACR, which was then known as the FCPA report. The ACR is a biweekly subscription publication that covers anti-corruption issues and compliance strategies. The ACR's primary audience is in-house compliance professionals and their advisors. At the time Di Schino started as Associate Editor, a small, privately-held company owned the ACR.

4

21. In the spring of 2014, Mergermarket acquired the FCPA Report and its sister publication, the Hedge Fund Law Report ("HFLR"). Mergermarket is a multinational media company that provides news, research, analysis, and data on the financial markets.

22. The next year, in April 2015, Mergermarket promoted Di Schino from Associate Editor to Editor in Chief of the ACR. In the promotion letter Di Schino received from Mark Seber ("Seber"), the Human Resource Manager for Mergermarket Americas, Seber congratulated Di Schino, writing that her "hard work and dedication [] made this promotion well-deserved."

23. Di Schino's new position came with a significant increase in responsibilities. After her promotion, Di Schino was responsible for, among other things, developing and implementing the editorial strategy for the ACR, working with internal and external contributors, and developing relationships with sources. Additionally, in her time as Editor in Chief, Di Schino designed and launched a newsletter product to grow the ACR's outreach to subscribers and potential subscribers. Di Schino also worked directly with sales staff to increase revenue by fostering relationships with in-house compliance teams. Finally, Di Schino served as the public face of the ACR at industry events. In this position, Di Schino oversaw approximately three employees.

24. As Editor in Chief of the ACR, Di Schino reported to Rebecca Hughes Parker ("Parker"), the Global Editor in Chief of the ACR and the Cybersecurity Law Report, another Mergermarket publication.

25. As part of her promotion, Di Schino received an increase in salary and became eligible to receive a discretionary annual bonus.

26.     Mergermarket paid Di Schino the maximum target bonus in each of her four years as ACR's Editor in Chief, including, most recently, in February 2019. Mergermarket also increased Di Schino's salary each year.

Mergermarket Learns about Di Schino's Pregnancies

27.     In the first week of March 2019, Di Schino confided in a colleague, Meagan Zwiebel ("Zwiebel"), the Senior Editor of the ACR, that Di Schino had learned that she was pregnant in February 2019 and had suffered a miscarriage in the beginning of March. Di Schino told Zwiebel that she was trying to become pregnant again.

28.      Zwiebel expressed her support for Di Schino and asked Di Schino if Zwiebel could tell Parker, Zwiebel and Di Schino's supervisor, that Di Schino had been pregnant and had experienced a miscarriage.  Di Schino agreed that Zwiebel should do so. Zwiebel communicated to Parker in early March 2019 that Di Schino had been pregnant and had a miscarriage.

29.     Di Schino learned that she was pregnant again later in Spring 2019.

30.     On June 18, 2019, Di Schino informed Parker and the majority of the ACR team that she was pregnant and that her pregnancy was high-risk. Di Schino explained to Parker and to Di Schino's direct reports that Di Schino would be taking leave.

31.     Several weeks later, on July 10, 2019, Di Schino informed Rory Sullivan ("Sullivan"), the Managing Director of Risk & Compliance for Mergermarket Americas, that Di Schino was pregnant and that Di Schino's child was due in December. Along with Parker, Sullivan was responsible for high-level decision making regarding the ACR's operations.

32.     On July 17, 2019, Sullivan wrote to the entire Law Report Group, which included the ACR, that the Law Report Group would be having a mandatory "collective team

6

meeting" for all Law Report Group publications on July 30, 2019. According to Sullivan's email, the purpose of the collective team meeting was to "review operational initiatives and strategy for the remainder of the year."

Termination

33.     On July 29, 2019, the day before the "collective team meeting" was scheduled, Sullivan reached out to Di Schino individually and asked for a "one-on-one" meeting. Di Schino agreed to meet with him the next day.

34.     During this meeting, Sullivan and Seber, the Head of HR, informed Di Schino that she was being "laid off." Sullivan and Seber told Di Schino that the lay-off was not related to her performance. To the contrary, Sullivan told Di Schino that she had been an "asset" to the publication.  Sullivan told Di Schino that Mergermarket had eliminated her role, purportedly due to budget cutbacks.

35.     On August 6, 2019, Di Schino spoke to Sullivan once again to discuss Mergermarket's decision to fire her. Sullivan reiterated that Di Schino's termination was "not related to [her] performance," that the ACR and Mergermarket "valued [her] contributions to making the publication what it is" and that he would "never say anything to the contrary." Di Schino's last day at the Mergermarket was August 9, 2019.

36.     Mergermarket's rationale for firing Di Schino is pretextual.

37.     First, Mergermarket purportedly eliminated Di Schino's position rather than that of her supervisor, Parker, who was not pregnant and did not notify the Company that she intended to take a protected leave. Unlike Di Schino, Parker struggled in her role at Mergermarket. Although Parker was initially responsible for three publications, the ACR, the HFLR, and the Cybersecurity Law Report, Mergermarket removed her from overseeing the HFLR. Upon

7

information and belief, it did so because Parker was unable to handle oversight of all three publications.

38. Second, although the ACR, along with some of the other Mergermarket publications, experienced financial difficulty, this had been true for virtually the entire time Di Schino had worked at the ACR. During the nearly four years that Di Schino served as Editor in Chief, the ACR had never met its sales targets. However, it was not until Di Schino notified Sullivan that she was pregnant that Mergermarket purportedly decided to eliminate her position.

39. Finally, Mergermarket's explanation that it had eliminated Di Schino's position—Editor in Chief of the publication—was false. Upon information and belief, Zwiebel, who was not pregnant, replaced Di Schino in many of her responsibilities, including serving as the public face of the Company. Zwiebel has less experience than Di Schino and no experience running a publication. Prior to Di Schino's firing, Zwiebel reported to Di Schino.

40. Upon information and belief, the Company increased Zwiebel's salary after it terminated Di Schino's employment. Zwiebel's salary now matches what Mergermarket paid Di Schino before it purportedly laid her off.

<u>Retaliation</u>

41. In early August 2019, Di Schino told Mergermarket that she believed that it had discriminated against her on the basis of her sex and pregnancy. Di Schino also complained to Mergermarket about its discriminatory conduct through her attorneys on August 15, 2019.

42. Even though Mergermarket fired Di Schino purportedly for financial reasons, in early 2020, Di Schino learned that Mergermarket was actively recruiting employees for HFLR, ACR's sister publication.

43.     On January 7, 2020, an external recruiter for Mergermarket sent Di Schino an email inviting Di Schino to apply for the role of Associate Editor at the HFLR.  Despite Mergermarket's claim that it had eliminated Di Schino's Editor in Chief position for financial reasons, the external recruiter also told Di Schino that the maximum salary for the Associate Editor position exceeded her total compensation as Editor in Chief of ACR.

44.     Di Schino applied for the job, explaining to the recruiter that, in her prior roles as Associate Editor and Editor in Chief of HFLR's sister publication ACR, Di Schino "was responsible for drafting and editing articles in the style and format used by [HFLR]"; [she] had built relationships with sources and contacts who would be relevant to HFLR; [she] already had an "established relationship with the HFLR sales team;" and she was "familiar with the front- and back-end of the HFLR website."

45.     On January 13, 2020, Di Schino filed the January 2020 charge against Mergermarket with the EEOC.

46.     Ten days after Di Schino filed the January 2020 Charge, she received an email from the external recruiter. The recruiter told Di Schino that she "heard back from [her] contact yesterday that they do not want to move forward with [Di Schino's] candidacy for the position." Further, the recruiter explained that "[a]lthough [she] asked, [she] was not given feedback" as to why Mergermarket was not interested in moving forward.

47.     Upon information and belief, Mergermarket refused to consider Di Schino's candidacy for the Associate Editor position because she raised protected complaints of unlawful discrimination.

48.     First, despite Di Schino's qualifications, including her editorial and writing experience and specific knowledge of Mergermarket and HFLR, Mergermarket did not even interview Di Schino for the position.

49.     Second, the Editor in Chief of HFLR, Bill de Cordova ("de Cordova"), had previously expressed his bias against pregnant women. In or around late 2015 or early 2016, Di Schino discussed with de Cordova, Parker, and Zwiebel, the candidacy of an applicant for a position at HFLR. Parker and de Cordova joked about the candidate being pregnant, including explaining that they had looked at the candidate's baby registry online even though they knew that they "shouldn't." Parker and de Cordova ultimately rejected the candidate.

<u>FIRST CAUSE OF ACTION</u>
Title VII: Discrimination

50.     Plaintiff repeats and realleges paragraphs 1 through 49 as if fully set forth herein.

51.     By the acts and practices described above, defendant discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII.

52.     Defendant engaged in these discriminatory practices with malice and with reckless indifference to plaintiff's rights protected under federal law.

53.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, and mental anguish, humiliation and damage to reputation, as a result of defendant's discriminatory practices unless and until this Court grants relief.

1131758 v1

## SECOND CAUSE OF ACTION
Title VII: Retaliation

54.     Plaintiff repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55.     By the acts and practices described above, defendant retaliated against plaintiff for her opposition to unlawful discrimination in violation of Title VII.

56.     Defendant acted with malice and/or reckless indifference to plaintiff's rights protected under federal law.

57.     As a result of defendant's retaliatory acts, plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation and other compensable damage unless and until this Court grants relief.

## THIRD CAUSE OF ACTION
State Law: Discrimination

58.     Plaintiff repeats and realleges paragraphs 1 through 57 as if fully set forth herein.

59.     By the acts and practices described above, defendant, in violation of the State Law, discriminated against plaintiff on the basis of her sex and age.

60.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's discriminatory practices.

## FOURTH CAUSE OF ACTION
State Law: Retaliation

61.     Plaintiff repeats and realleges paragraphs 1 through 60 as if fully set forth herein.

1131758 v1

62.     By the acts and practices described above, defendant, in violation of the State Law, retaliated against plaintiff because of her opposition to defendant's unlawful conduct.

63.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's discriminatory practices.

## FIFTH CAUSE OF ACTION
### City Law: Discrimination

64.     Plaintiff repeats and realleges paragraphs 1 through 63 as if fully set forth herein.

65.     Before Defendant fired Di Schino, she worked for defendant at the Company's headquarters in New York City.

66.     By the acts and practices described above, defendant, in violation of the City Law, discriminated against plaintiff on the basis of her sex and age.

67.     Defendant engaged in discrimination with willful or wanton negligence, with recklessness, and/or with a conscious disregard of plaintiff's rights or conduct so reckless that it amounts to such disregard.

68.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's discriminatory practices.

## SIXTH CAUSE OF ACTION
### City Law: Retaliation

69.     Plaintiff repeats and realleges paragraphs 1 through 68 as if fully set forth herein.

70.     Before defendant fired Di Schino, she worked for defendant at the Company's headquarters in New York City.

71.     By the acts and practices described above, defendant, in violation of the City Law, retaliated against plaintiff because of her opposition to defendant's unlawful conduct.

72.     Defendant engaged in retaliation with willful or wanton negligence, with recklessness, and/or with a conscious disregard of plaintiff's rights or conduct so reckless that it amounts to such disregard.

73.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's discriminatory practices.

## SEVENTH CAUSE OF ACTION
### FMLA: Interference

74.     Plaintiff repeats and realleges paragraphs 1 through 73 as if fully set forth herein.

75.     By the acts and practices described above, defendant interfered with, restrained, and denied plaintiff her rights in violation of the FMLA, 29 U.S.C. § 2615(a)(1).

76.     Defendant knew that their actions violated the FMLA; these violations of the FMLA were willful and not in good faith.

77.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's actions.

## EIGHTH  CAUSE OF ACTION
### FMLA: Retaliation

78.     Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

1131758 v1

79.     By the acts and practices described above, defendant retaliated against plaintiff for attempting to exercise her rights, in violation of the FMLA, 29 U.S.C. § 2615(a)(2).

80.     Defendant knew that their actions violated the FMLA; these violations of the FMLA were willful and not in good faith.

81.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendant's actions.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment:

(a)     declaring the acts and practices complained of herein to be violations of Title VII, the FMLA, the State Law, and the City Law.

(b)     enjoining and permanently restraining these violations of Title VII, the FMLA, and the State Law, and the City Law.

(c)     directing defendant to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d)     directing defendant to place plaintiff in the position she would have occupied but for defendant's unlawful treatment of her, and making her whole for all earnings and other benefits she would have received but for defendant's discriminatory treatment, including but not limited to wages, including back pay and front pay, bonuses, and other lost benefits;

(e)     directing defendant to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, pain and suffering, and injury to professional standing and reputation;

(f)     directing defendant to pay plaintiff additional amounts as punitive damages;

(g)     directing defendant to pay plaintiff an additional amount as liquidated damages under the FMLA;

(h)     awarding plaintiff such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award;

(i)     awarding plaintiff the costs of this action, together with reasonable attorneys' fees; and

(j)     awarding such other and further relief as this Court deems necessary and proper.

<u>DEMAND FOR A TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated: New York, New York
      November 20, 2020

VLADECK, RASKIN & CLARK, P.C.

By:      /s/ Anne L. Clark
Anne L. Clark
Emily Miller
Attorneys for Plaintiff
565 Fifth Avenue, 9th Floor
New York, New York 10017
(212) 403-7300

15